UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATIUSKA BRAVO, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 4510 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., and | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Katiuska Bravo sued Midland Credit Management, Inc., and Midland Funding, LLC

(together, "Midland"), for violating the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq*. Doc. 1. Midland has moved to dismiss the complaint under Federal Rule

of Civil Procedure 12(b)(6). Doc. 15. The motion is granted.

### Background

In considering Midland's motion, the court assumes the truth of the complaint's factual

allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir.

2012). The court must also consider "documents attached to the complaint, documents that are

critical to the complaint and referred to in it, and information that is subject to proper judicial

notice," along with additional facts set forth in Sequoia's brief opposing dismissal, so long as

those additional facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d

743, 745 n.1 (7th Cir. 2012). The following facts are stated as favorably to Bravo as those

materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

This is the second FDCPA suit that Bravo has brought against Midland. The first

FDCPA suit, *Covarrubias v. Midland Credit Management, Inc.*, No. 14 C 412 (N.D. Ill. filed

Jan. 22, 2014), settled on March 20, 2014.  Doc. 1 at ¶ 14.  As part of the settlement, Midland

forgave two of Bravo's debts, one incurred on a GE/Lowe's account and the other on a

Citibank/Sears account.  *Ibid*.  On April 14, 2014, Bravo voluntarily dismissed the first suit with

prejudice.  *Covarrubias*, No. 14 C 412, Doc. 20.

      On May 5, 2014, Midland sent two letters seeking payment on the two debts it had just

forgiven in settling the first suit.  Doc. 1 at ¶ 15.  The letters were addressed to Bravo and sent

care of David J. Philipps, Bravo's lead attorney in both the earlier suit and this suit, to Philipps's

business address.  Doc. 1-6.  The letters are materially identical; here is a copy of one of them:



**mcm** 8875 Aero Drive
Suite 200
San Diego, CA 92123

Hours of Operation.............M – Th: 6:00am – 7:00pm PST
Fri: 6:00am – 5:00pm PST
Sat: 6:00am – 2:00pm PST
Sun: 5:00am – 1:30pm PST

Original Creditor.............. GE Capital Retail Bank
Original Account Number.

Katiuska Bravo
C/O David J. Philipps
9760 S Roberts Rd Ste 1
Palos Hills, IL 60465-1686

MCM Account Number.....
Current Balance.................$1,797.92

05-05-2014 | MCM Account Number

RE: GE Capital Retail Bank / Lowe's

Dear Katiuska,

We would like to thank you for your previous payment on your account. Our records indicate that you have not made a payment in the last 35 days. Your previous effort to make a payment on this account has proven you are interested in resolving this debt.

We understand there are situations that may have prevented you from paying last month and would like to offer you the opportunity to resolve your account.

To re-establish a positive payment history with us, the following options are available:

- Call one of our Account Managers today at (800) 265-8825 to discuss your account set up a payment arrangement.
- Mail your payment using the Payment Certificate below in the envelope provided.

Sincerely,

Midland Credit Management, Inc.

**Additional Information**

This account may still be reported on your credit report as unpaid.

PLEASE SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION
Please tear off and return lower portion with payment in envelope provided

## Payment Certificate

**Directions:**

MCM Account Nubmer:
Original Account Number:
Current Balance: $1,797.92

1) Make your check payable to: Midland Credit Management, Inc.
2) Fill out the amount enclosed on the Payment Certificate
3) Place your check and Payment Certificate in the envelope provide
4) Mail Payment Certificate to:

Amount Enclosed: $

**mcm** Midland Credit Management, Inc.
P.O. Box 60578
Los Angeles, CA 90060-0578

Doc. 1-6 at 1. On May 17, 2014, Philipps emailed Midland's counsel from the first suit to inform him that Midland had failed to close Bravo's accounts and was trying to collect debts that

Bravo no longer owed; the email was sent under the Subject "Katiuska Bravo" and said: "Ted: Your client failed to close down her accounts and is sending collection letters to her, in care of my office, on account numbers [redacted] (GE Retail) and [redacted] (Citibank)." Doc. 21-1 at 2. On May 19, 2014, Midland's counsel acknowledged receipt of Philipps's email, saying: "Thanks Dave for letting me know about this. Could you please send me a copy of the letters at your convenience." *Id*. at 2. Philipps sent Midland's counsel a copy of the letters, *ibid*., and Bravo does not allege or even imply that she received any further letters about the two debts from that point forward. On June 16, 2014, our litigation culture being what it is, Bravo sued Midland a second time, again under the FDCPA. Doc. 1.

### Discussion

Bravo's complaint has two counts. Count I alleges that Midland violated 15 U.S.C. § 1692c(c) by continuing to contact Bravo about debts that she had already indicated that she refused to pay. Doc. 1 at ¶¶ 18-21. Count II alleges that Midland violated 15 U.S.C. § 1692e(5) by taking action against Bravo in connection with the collection of debts that it could not legally take. *Id.* at ¶¶ 22-25. Both counts fail to state a viable claim.

Section 1692c(c) prohibits a debt collector, with certain exceptions not relevant here, from "communicat[ing] further with the consumer" about a debt once the consumer "notifies [the] debt collector in writing that the consumer refuses to pay [the] debt or that the consumer wishes the debt collector to cease further communications with the consumer." 15 U.S.C. § 1692c(c). In *Tinsley v. Integrity Financial Partners, Inc.*, 634 F.3d 416 (7th Cir. 2011), the Seventh Circuit held that § 1692c(c) does not apply to communications between the debt collector and the debtor's attorney. The debtor in *Tinsley* was dunned for a debt and retained a lawyer; the lawyer sent the debt collector a letter stating that the debtor refused to pay,

requesting that all collection activities cease, and asking that all future communications be directed to the lawyer's office; and the debt collector refrained from contacting the debtor but did call the lawyer with a request for payment. *Id*. at 416. The debtor sued, alleging that the collector violated § 1692c(c) by contacting the lawyer with a request for payment. The debtor argued that because communication with an agent (the lawyer) is deemed to be a communication with the principal (the debtor), the collector's call to the lawyer was a communication with the debtor for purposes of § 1692c(c). *Id*. at 417.

The Seventh Circuit rejected the debtor's position. The court noted that § 1692c(a)(2) provides that "a debt collector who knows that a consumer is represented by an attorney must communicate with the lawyer," adding that "the point of [that provision] is to tell the debt collector that it is OK to communicate with the debtor's attorney even when it is forbidden to communicate with the debtor." *Id*. at 418. And the court explained that if the debtor's reading of § 1692c(c) were correct, then "once a debt collector knows that a debtor has a lawyer, it becomes illegal to communicate with either the debtor or the lawyer—because any communication with the lawyer is an 'indirect' communication with the client, and thus forbidden." *Id*. at 419. That, the Seventh Circuit concluded, would be implausible, for "[w]hy would Congress have provided that hiring a lawyer makes it impossible for the debtor and debt collector to communicate through counsel?" *Ibid*. The Seventh Circuit accordingly held that "§ 1692c as a whole permits debt collectors to communicate freely with consumers' lawyers," noting that "[a] debtor who does not want to be pestered by demands for payment, settlement proposals, and so on, need only tell his lawyer not to relay them." *Ibid*.

Bravo tries to distinguish *Tinsley* on the ground that the debt collector there made its communication (a phone call) directly to the debtor's lawyer, while here Midland addressed its

letters to Bravo "c/o" Philipps rather than to Philipps himself. Doc. 21 at 7. That's a distinction without a difference. As *Tinsley* recognized, because "a communication to an agent is deemed to be a communication to the principal," "[a]nything a debt collector says to a debtor's lawyer is an indirect communication to the debtor." 634 F.3d at 417. Or as *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769 (7th Cir. 2007), put the same point: "[I]f the debt collector knows that the consumer is represented by a lawyer, then (with immaterial exceptions) he may not communicate with the consumer directly. § 1692c(a)(2). He must go through the lawyer. The lawyer receives the notice and shares it with, or explains it to, his client. Hence the debt collector is communicating with the consumer within the meaning of the Act …." *Id.* at 773. The lesson is that *every* communication to a debtor's attorney is, effectively and for all practical purposes, a communication to the debtor "care of" the attorney. Because there is no legally pertinent difference between the two, and because *Tinsley* holds that communications directly to the debtor's attorney are not covered by § 1692c(c), the same holds for written communications addressed to the debtor but sent "care of" the attorney to the attorney's business address. The § 1692c(c) claim has no merit and is dismissed.

Section 1692e prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To flesh out that general prohibition, § 1692e sets forth "a nonexclusive list of prohibited practices" in sixteen subsections. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). Although a plaintiff "need not allege a violation of a specific subsection in order to succeed in a § 1692e case," *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012), Bravo's complaint cites subsection (5), which prohibits "[t]he *threat* to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5) (emphasis added). In the portion of the

6

complaint alleging a violation of § 1692e(5), Bravo alleges that the provision "prohibits debt collectors from *taking* actions that cannot legally be taken in connection with the collection of a debt" and that "[b]y sending out collection letters on [the] two debts," Midland "*took* actions [it] could not legally take" given the settlement of the two debts in the earlier case. Doc. 1 at ¶¶ 23-24 (emphasis added).

As the emphasized terms in the last two sentences show, there is a mismatch between the § 1692e(5)'s text and the § 1692e(5) claim in Bravo's complaint. By its plain terms, § 1692e(5) prohibits only the *threat* of unlawful action, not the unlawful action *itself*; the complaint, by contrast, alleges that Midland *took* unlawful action. That was no slip of the pen, for in response to Midland's contention in its initial brief that the letters did not threaten any action, Doc. 16 at 7-8, Bravo's opposition brief argues that § 1692e(5) prohibits taking unlawful actions as well as threatening them. Doc. 21 at 6. Neither of the cases she cites—*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 947-48 (9th Cir. 2011), which does not discuss § 1692e(5), and *Coulter v. Manley Deas Kochalski LLC*, 2014 WL 1891206, at *3 (S.D. Ind. May 9, 2014), which holds only that the plaintiff stated a claim under § 1692e generally— support this proposition. Still, there are decisions that do. *See*, *e.g.*, *Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 350-51 (5th Cir. 1997); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 729-30 (D. Md. 2011).

This court respectfully disagrees with those decisions. Elsewhere in the FDCPA, Congress was explicit when it intended to prohibit both threats to act and actually acting. *See* 15 U.S.C. § 1692d(1) (prohibiting "[t]he use *or* threat of use of violence or other criminal means" in connection with debt collection) (emphasis added). That Congress did not do the same thing in § 1692e(5) confirms that Congress intended that provision to prohibit only threats, not actions.

*See Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671 (2008) ("[W]hen Congress

includes particular language in one section of a statute but omits it in another section of the same

Act, it is generally presumed that Congress acts intentionally and purposely in the disparate

inclusion or exclusion.") (internal quotation marks omitted); *Brumfield v. City of Chicago*, 735

F.3d 619, 628-29 (7th Cir. 2013); *Moral-Salazar v. Holder*, 708 F.3d 957, 961-62 (7th Cir.

2013). It follows that Midland did not violate § 1692e(5) simply by mailing two letters it should

never have mailed. Although the Seventh Circuit has not yet spoken to the issue, the weight of

authority from districts courts in this Circuit, including decisions by then-District Judges Tinder

and Hamilton, supports this conclusion. *See Thompson v. CACH, LLC*, 2014 WL 5420137, at *4

(N.D. Ill. OCt. 24, 2014) ("threats in and of themselves … animate § 1692e(5), not what unfolds

following the taking of a debt collection action"); *Fick v. Am. Acceptance Co., LLC*, 2012 WL

1074288, at *4 (N.D. Ind. Mar. 28, 2012) ("The plain language of the statute makes clear that the

prohibition extends only to threats to take action that cannot be legally taken …, but not illegal

actions actually taken."); *Wehrheim v. Secrest*, 2002 WL 31242783, at *5 (S.D. Ind. Aug. 16,

2002) (Tinder, J.) ("The court rejects Plaintiff's attempt to equate threats of action with actions

actually taken."); *Clark v. Pollard*, 2000 WL 1902183, at *3 (S.D. Ind. Dec. 28, 2000)

(Hamilton, J.) ("By its plain language, subsection (5) applies to threats of action, not to actions

actually taken.").

     Although a dunning letter could violate § 1692e(5) if it makes a threatening statement,

Bravo's complaint does not allege, and her opposition brief does not contend, that Midland's

letters conveyed threats; indeed, the opposition brief references § 1692e(5) only once, and only

to contend that it prohibits actions as well as threats. Doc. 21 at 6. Accordingly, Bravo has

forfeited any argument that the letters threatened to take action that Midland could not legally

take or did not intend to take, which leaves her without a viable § 1692e(5) claim. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("Longstanding under our case law is the rule that a person waives an argument by failing to make it before the district court. We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss.") (citations omitted); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995) (holding that "when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action," and making clear that "[t]he federal courts will not invent legal arguments for litigants").

Bravo's failure to argue that Midland's letters conveyed actionable threats under § 1692e(5) stands to reason. In determining whether a collector's statement violates § 1692e, courts normally consider the statement from the viewpoint of the "unsophisticated consumer." *See McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 503 (7th Cir. 2008). However, as noted above, Midland's letters were sent to Philipps, not Bravo, and, as the Seventh Circuit has held, "the 'unsophisticated consumer' standpoint is inappropriate for judging communications with lawyers." *Evory*, 505 F.3d at 774. Rather, statements made to a debtor's lawyer violate § 1692e only if they are likely "to deceive a competent lawyer, even if he is not a specialist in consumer debt law." *Id*. at 775. Bravo neither alleges nor argues that a lawyer receiving Midland's letters would consider them threatening, and it is difficult to see how she plausibly could have so alleged or argued.

So Midland did not violate § 1692e(5). That does not end the discussion, though, because Bravo's opposition brief argues that Midland's letters violated § 1692e's more general prohibition against "false, deceptive, or misleading representations." Doc. 21 at 3-6. Bravo is

entitled to invoke § 1692e's general prohibition in opposing dismissal. The Seventh Circuit has long held, and the Supreme Court recently reaffirmed, that a complaint need not identify any legal theory, and that even if a complaint does identify a legal theory, the plaintiff may defend her suit against dismissal by relying a different legal theory. *See Johnson v. City of Shelby*, 135 S. Ct. 346 (2014); *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) ("While a plaintiff may plead facts that show she has no claim, she cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all.") (citation omitted); *Stransky*, 51 F.3d at 1335 ("Stransky correctly states that his complaint need not contain the legal predicate for his claim."). That said, "when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action. The federal courts will not invent legal arguments for litigants." *Stransky*, 51 F.3d at 1335.

Bravo argues that Midland's letters violated § 1692e by making false representations about the status of Bravo's debts. Doc. 21 at 3 ("Defendants' May 5, 2014 collection letters … falsely stated that Ms. Bravo still owed debts which had been released as part of the settlement of her prior lawsuit, in violation of § 1692e of the FDCPA."). Bravo is right that Midland's statements that she owed money on her GE/Lowe's and Citibank/Sears accounts were false. Yet a plaintiff must show more than a falsehood to state a § 1692e claim; the Seventh Circuit has repeatedly held that "an FDCPA plaintiff bears the burden of proving that even a false statement would mislead or deceive the unsophisticated consumer." *Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009) ("[An FDCPA plaintiff] could not prevail in the district court simply by proving that statements in the notice were false. Whether they were false or not, she had to

prove that an unsophisticated consumer would be deceived or misled by them."); *see also Lox*, 689 F.3d at 822 ("a statement made by a debt collector that is technically false but in no way misleading does not run afoul of § 1692e"); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) (same). Put another way, and as the Seventh Circuit explained in *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009), a plaintiff must prove that the false representation was material; it will not do to prove only that, say, a debt collector promised to send its letters on blue paper but really used tan.

To survive dismissal, therefore, Bravo must prove that Midland's false representation was deceptive or misleading. But deceptive or misleading to whom? *Ruth* and the other above-cited cases involved false representations directly to a debtor. As previously discussed, this case involves false representations to the debtor's lawyer. On the question of how to consider a false representation to the debtor's lawyer, *Evory* stated:

> A sophisticated person is less likely to be either deceived or misled than an unsophisticated one. That is less true if a statement is false. A false claim of fact in a dunning letter may be as difficult for a lawyer to see through as a consumer. Suppose the letter misrepresents the unpaid balance of the consumer's debt. The lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake. Such a misrepresentation would be actionable whether made to the consumer directly, or indirectly through his lawyer.

505 F.3d at 775. Thus, false claims of fact *may*, not *must*, be as difficult for a lawyer to see through as for a debtor. Here, Midland's letters misrepresented not the *amount* of Bravo's debts, but that she had debts *at all*. It would not have taken an expensive or extensive investigation—or even any investigation at all—for a competent lawyer to know Bravo owed no debts and that the letters were false. It certainly was not difficult for Philipps to discover this, as he had just negotiated the settlement that eliminated the debts and was able to email his opposing counsel about the situation. And even if Philipps had not been personally involved, any competent

lawyer would have been aware that his client had recently settled a debt. *See id.* at 774 (noting that a lawyer "would not have to be an expert on the [FDPCA] to be able to look it up and discover" whether a given communication met its requirements).

Bravo responds that it does not matter whether Philipps knew that the collection letters were unfounded. The important point, as she sees it, is that Philipps "did not know, factually, whether [Midland was] still *treating* the debts as unsettled." Doc. 21 at 6 (emphasis added). Bravo cites *Captain v. ARS National Services, Inc.*, 636 F. Supp. 2d 791 (S.D. Ind. 2009) (Hamilton, J.), for this proposition, but the case is inapposite. The defendant in *Captain* allegedly threatened the plaintiff's lawyer that if his client did not pay a debt, it would start imposing a $15 per day penalty. *Id.* at 796. The court observed that, even though the lawyer doubted that such a penalty was in fact legal, "[p]arties often knowingly make threats of illegal action, hoping that the threat will intimidate the opposing party." *Ibid.* The court held that the plaintiff stated a claim because the lawyer "or any other lawyer in his position would have to take seriously the threat that was made." *Id.* at 796-97. Here, by contrast, there was no reason for Philipps to "take seriously" the falsehood in Midland's letters—which, as noted, contained no threats at all. Parties do not often knowingly send collection letters to lawyers with whom they have just concluded settlement negotiations in the hope of tricking the lawyer's client into paying up. In short, the letters were false enough to justify Philipps's email to Midland's counsel— which conveyed in no uncertain terms that Midland had failed to close down Bravo's accounts and mistakenly sent the collection letters—but they were not so false as to mislead a competent lawyer about the status of Bravo's debt.

**Conclusion**

For the foregoing reasons, Midland's motion to dismiss is granted. *See Evory*, 505 F.3d at 776 (holding that FDCPA cases may be dismissed on the pleadings: "A plaintiff might rest on the text of the communication, and have no other evidence to offer, and then if there was nothing deceptive-seeming about the communication the court would have to dismiss the case.") (citing cases). The dismissal is without prejudice to Bravo filing an amended complaint. Although it is doubtful that Bravo can save her case through repleading, the court will give her one opportunity to do so. *See Bausch v. Stryker*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."). If Bravo would like to file an amended complaint, she has leave to do so by January 6, 2015. If Bravo does not file an amended complaint by that date, the court will dismiss the case with prejudice and enter final judgment.

December 9, 2014

_____
United States District Judge